THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v* JOEL WARREN, Defendant-Appellant.

Fifth District   No. 82—180

Opinion filed March 8, 1983.

2

HARRISON, P.J., dissenting.

Mark A. Hamrock, of Murphysboro, for appellant.

John A. Clemons, State's Attorney, of Murphysboro (Stephen E. Norris and Frank J. Bieszczat, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant, Joel F. Warren, was charged by information with two counts of deviate sexual assault. Following a bench trial, defendant was convicted on both counts and was sentenced to a term of six

years in prison.

On appeal, defendant contends that the State did not prove him guilty of deviate sexual assault beyond a reasonable doubt. Specifically, defendant argues that the State failed to prove that the acts complained of were committed by force or threat of force or against the will of the complainant. Defendant further contends that he was denied due process of law when the court convicted him on the basis of an improper standard of guilt.

At the time of the incident, defendant, Joel Warren, was 30 years of age and was a student at Southern Illinois University. Complainant was 32 years of age and worked as a volunteer at Synergy, an organization located in Carbondale, Illinois.

Complainant testified that on the afternoon of July 1, 1980, she rode her bicycle to Horstman's Point, which overlooks the Carbondale City Reservoir in Carbondale. While complainant was standing alone at Horstman's Point, defendant approached her and initiated and engaged in a conversation with her. Although complainant did not know defendant, she responded to his conversation which was general in nature.

Complainant started to walk away from the lake in the direction of her bicycle which was at the top of the hill. While she walked up the hill, defendant continued talking as he walked alongside of her. Complainant testified that when she got on her bicycle defendant placed his hand on her shoulder. At this time, complainant stated, "No, I have to go now," to which defendant responded, "This will only take a minute. My girlfriend doesn't meet my needs." Defendant also told her that "I don't want to hurt you."

According to complainant, defendant then lifted her off the ground and carried her into a wooded area adjacent to the reservoir. Upon entering the woods, defendant placed complainant on the ground and told her to put her head on his backpack. Defendant then told her to take her pants down which she did part way. Defendant pulled her pants completely off and placed them underneath her. He then proceeded to pull up complainant's tank top shirt and began kissing her breasts and vaginal area. After he finished kissing complainant, defendant sat up and unzipped his pants and complainant performed an act of fellatio upon him.

At the completion of this second act, defendant gave complainant an article of clothing to wipe her mouth. Complainant then dressed and defendant picked her up again and carried her back to her bicycle. Defendant testified that complainant asked him, "Is that all?" to which he answered, "Yes."

Complainant got on her bicycle and rode to Synergy, where she spoke to a volunteer worker who referred her to the Women's Center in Carbondale. At the Women's Center, she spoke with Mary Kay Bachman, with whom she went to the Carbondale Police Department. Complainant related the incident to Officer William Kilquist, who testified that complainant appeared to be very upset. Officer Kilquist further testified that no formal report was prepared at the request of complainant.

On February 15, 1981, complainant saw defendant while she was jogging and reported him to the police as the man with whom she had sexual relations. Defendant was arrested at his home later that day by Officers Hunziker and Hawk of the Southern Illinois Police Department and charged with deviate sexual assault.

At the outset, we note that there are no significant inconsistencies in the testimony of the two parties. Instead, we are faced with facts which are susceptible of more than one reading. Defendant admits that he performed the acts upon which the deviate sex charges are based. He contends, however, that the acts complained of were performed without force or threat of force.

Reviewing courts are especially charged with the duty of carefully examining the evidence in rape or deviate sexual assault cases and it is the duty of the reviewing court to reverse the judgment unless the evidence is sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty of the crime charged. (*People v. Anderson* (1974), 20 Ill. App. 3d 840, 847, 314 N.E.2d 651, 656.) The ultimate issue presented for review in the instant case is whether the State satisfactorily proved that the acts complained of were committed by force or threat of force as required to constitute deviate sexual assault.

To sustain a conviction for deviate sexual assault, there must be evidence that defendant, by force or threat, compelled another to perform or submit to any act of deviate sexual conduct. (*People v. Cornes* (1980), 80 Ill. App. 3d 166, 172, 399 N.E.2d 1346, 1350.) There is, however, no definite standard which fixes the amount of force which is required to sustain the charge of rape or deviate sexual assault. Each case must be examined on the basis of its own particular facts. *People v. Smith* (1965), 32 Ill. 2d 88, 203 N.E.2d 879.

In the present case, the State contends that defendant coerced complainant into engaging in deviate sexual acts by threatening to use physical force. The State maintains that this threat was conveyed by defendant's statement that "I don't want to hurt you," the implication being that he would hurt her if she did not comply. Al-

though this interpretation has some merit, we do not believe that it is the most reasonable conclusion drawn from the facts. Defendant did not make the above statement while brandishing a weapon or applying physical force, a circumstance which would support the State's construction. Instead, we find that the record is devoid of any attendant circumstances which suggest that complainant was compelled to submit to defendant.

In addition, the State argues that the threat of force was conveyed by the disparity of size and strength between the parties. The record shows that at the time of the incident complainant was 5'2" tall weighing 100 to 105 pounds, whereas defendant was 6'3" and 185 pounds. The State further maintains that the seclusion of the woods contributed to this threat of force. Although it is proper to consider such factors in weighing the evidence, we do not believe that the evidence taken as a whole supports the State's conclusion. Aside from picking up complainant and carrying her into and out of the woods, defendant did not employ his superior size and strength. Furthermore, complainant did not attempt to flee or in any meaningful way resist the sexual advances of defendant.

Much of the State's case rests upon its contention that complainant's absence of effort in thwarting defendant's advances was motivated by her overwhelming fear. In support of this position, the State offers complainant's statement that she did not attempt to flee because, "it was in the middle of the woods and I didn't feel like I could get away from him and I thought he'd kill me." Moreover, complainant stated that she did not yell or scream because the people she had seen in the area were too far away and that under the circumstances she felt that screaming "*** would be bad for me."

Despite professing fear for her safety, complainant concedes that defendant did not strike her or threaten to strike her or use a weapon. When defendant picked up complainant and carried her into the wooded area, she did not protest but merely stated, "I can walk." Although she maintained that she stiffened up to make it harder for him to carry her, defendant did not recall any resistance. At no time did complainant tell defendant to leave her alone or put her down. Furthermore, complainant did not object when defendant instructed her to take off her pants, but instead she complied with his request by pulling down her pants part way.

Facts similar to those presented here prompted the court to reverse a conviction for rape in People v. Taylor (1971), 48 Ill. 2d 91, 268 N.E.2d 865. In that case, the complaining witness testified that defendant coerced her into his automobile by threatening to shoot her.

Although she never saw the gun, complainant entered defendant's car. She further testified that while driving they engaged in conversation concerning various topics. During this time complainant did not cry for help or attempt to flee even though they were driving on well traveled roads and stopped at numerous stop signs. The reviewing court considered that complainant did not object to defendant's request that she undress nor did she resist his sexual advances. The court also noted that complainant kissed defendant goodbye before leaving him. In reversing the conviction, the court stated that these facts did not create an abiding conviction of defendant's guilt.

■■ ■ In the case before us, defendant maintains that once complainant became aware that defendant intended to engage in sexual relations it was incumbent upon her to resist. This resistance would have the effect of giving defendant notice that his acts were being performed without her consent. It is well settled that if complainant had the use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will. If the circumstances show resistance to be futile or life endangering or if the complainant is overcome by superior strength or paralyzed by fear, useless or foolhardy acts of resistance are not required. (*People v. Faulisi* (1962), 25 Ill. 2d 457, 185 N.E.2d 211.) We cannot say that any of the above factors are present here. Complainant's failure to resist when it was within her power to do so conveys the impression of consent regardless of her mental state, amounts to consent and removes from the act performed an essential element of the crime. (*People v. Borak* (1973), 13 Ill. App. 3d 815, 301 N.E.2d 1.) We do not mean to suggest, however, that the complainant did in fact consent; however, she must communicate in some objective manner her lack of consent.

Defendant's second contention is that the trial court violated his due process by applying an erroneous standard of guilt. Defendant maintains that the trial court created a new standard of guilt in determining that defendant used "psychological force" to overcome the will of complainant.

■■ In denying defendant's post-trial motion for a new trial, the trial court recited the facts and circumstances surrounding the incident and stated:

"The Court has considered the evidence as a whole, *** in making its determination that the actions of the defendant in this case amounted to force *** because in my opinion the combination of the physical actions and the verbal abuse, the whole atmosphere that was created by this defendant, which amounts

to psychological force in a criminal act in this state."

Although the trial court employed a new term in entering its judgment, we believe it is clear that the court applied the statutory standard of guilt. We believe, however, that the State has not proved that defendant committed deviate sexual acts by force or threat of force as required by statute. Consequently, the judgment of conviction for deviate sexual assault is reversed.

Reversed.

KASSERMAN, J., concurs.

PRESIDING JUSTICE HARRISON, dissenting:

I respectfully dissent.

It is well settled that a victim need not resist when to do so would be futile or life endangering, or where she is overcome by superior strength or paralyzed by fear. (*People v. Clarke* (1971), 50 Ill. 2d 104, 109, 277 N.E.2d 866.) Such was the case here. The victim testified that she did not scream because there was no one in the vicinity to hear her screams. She considered escaping but decided that an attempt would be futile because she could not outrun the defendant in the woods. She testified that she resisted when he carried her into the woods, although she did not strike or otherwise physically assault him because of the likelihood that such behavior would anger him. She was overpowered by him physically (compare 5 ft. 2 in., 100 lbs., to 6 ft. 3 in., 185 lbs.) and felt extremely vulnerable in such an isolated area where no one was around to help her. Under these circumstances, where violent resistance might only have provoked the defendant, her acquiescence was reasonable and did not constitute consent. *People v. Schmitt* (1981), 99 Ill. App. 3d 184, 188, 424 N.E.2d 1267.

In addition, the victim made an immediate complaint to a counseling center and to the police. A prompt complaint to authorities has been held sufficient corroboration. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 1045, 377 N.E.2d 179.) And even if uncorroborated, the testimony of the witness alone can be sufficient to justify the conviction if that testimony is clear and convincing. (*People v. Hine* (1980), 88 Ill. App. 3d 671, 677, 410 N.E.2d 1017.) In my view, her account of the episode and the reasons explaining her behavior were clear and convincing. Therefore, I would affirm the defendant's conviction for deviate sexual assault.